IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SHEILA TRUJILLO,**

    **Plaintiff,**

v.                                                                                                         No. 22-cv-00967-JCH-LF

**GARRISON PROPERTY AND**
**CASUALTY INSURANCE COMPANY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Sheila Trujillo's *Motion to Remand* (ECF No. 5). Because Defendant Garrison Property and Casualty Insurance Company has met its burden of proving jurisdictional facts by a preponderance of the evidence that show that $75,000 is possibly at stake, the Court will deny Ms. Trujillo's motion.

**I.**     **Factual and Procedural Background**

An underinsured motorist injured Ms. Trujillo. *See* Compl. ¶ 6 (ECF No. 1-1). She alleged that she "incurred more than $17,000 in current medical bills as well as lost wages and other classes of damages." *Id.* ¶ 9. The underinsured motorist's insurance paid Ms. Trujillo $25,000—the per person policy limit for that motorist's coverage. *Id.* ¶¶ 7, 11. According to Ms. Trujillo, that amount was "grossly inadequate" to make her whole. *Id.* ¶ 12.

So Ms. Trujillo turned to her own insurer, Garrison, with whom she held underinsured motorist coverage. *Id.* ¶ 13. She "demanded the policy limits, minus off-set, in [underinsured motorist benefits] from Garrison's." *Id.* ¶ 14. Specifically, in a letter to Garrison dated August 25, 2022, Ms. Trujillo stated, "It is our understanding that Ms. Trujillo has limits of $100,000. We,

therefore, demand the limits—new money—of $75,000 under the . . . policy." Def.'s Ex. B, at 2 (ECF No. 7-2).[1]

On September 28, 2022, Garrison responded to Ms. Trujillo with what she calls a "lowball offer." ECF No. 1-1, ¶ 15. On November 8, 2022, Ms. Trujillo counteroffered for $49,000. *See* Pff.'s Ex. B, at 2 (ECF No. 5-2).[2] Garrison rejected the counteroffer. *See* ECF No. 1-1, ¶ 16. And on November 17, 2022, Ms. Trujillo filed a complaint in state court. *See id.* at 1.

Ms. Trujillo's complaint includes four counts: breach of contract, insurance bad faith, unfair insurance claims practices, and unfair trade practices. *See id.* at 3-6. Ms. Trujillo seeks reasonable attorney's fees and punitive damages for all four counts. *See id.* ¶¶ 20-21, 35-36, 42, 46-47. As required by state rule, Ms. Trujillo attached to her complaint a certification regarding whether the case was suitable for expedited arbitration. *See* ECF No. 5, at 1; Pff.'s Ex. A (ECF No. 5-1) (arbitration certificate). She certified that the amount she seeks does not exceed $50,000 "exclusive of punitive damages, interest, cost and attorney's fees." ECF No. 1-1, at 11.

Garrison removed the case to this Court. Ms. Trujillo then moved to remand. She argues that the amount in controversy is insufficient for federal jurisdiction.

---

[1] The record reflects uncertainty over Ms. Trujillo's policy limits. According to Garrison, Ms. Trujillo's policy limit for underinsured motorist coverage is $300,000. *See* Resp. 2 (ECF No. 7); Def.'s Ex. A (ECF No. 7-1) (policy declarations). The parties did not present the Court with an actual communication demanding $275,000 (i.e., a $300,000 policy limit minus a $25,000 offset). Rather, Garrison presented the Court with a citation to Ms. Trujillo's policy declarations and her statement in the complaint that she "demanded policy limits, minus off-set." ECF No. 1-1, ¶ 14. Garrison also presented the Court with the August 2022 letter cited above, in which Ms. Trujillo demanded her policy limit (minus offset) of $75,000. It is unclear whether Ms. Trujillo would have demanded $275,000 if she understood her policy limit to be $300,000.

[2] The November 2022 communication shows that Garrison previously offered $8,500; it is not clear whether this was the "lowball offer."

**II.     Legal Background**

Subject matter jurisdiction based on diversity of citizenship exists only if the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008). If a state-court defendant seeks to remove a case and invoke a federal court's diversity jurisdiction, then the amount in controversy will typically be what the state-court plaintiff demands in the complaint. *See* 28 U.S.C. § 1446(c)(2). But in New Mexico, "[u]nless it is a necessary allegation of the complaint, the complaint shall not contain an allegation for damages in any specific monetary amount." Rule 1-008(A)(3) NMRA. And if state practice "does not permit demand for a specific some of money," § 1446(c)(2)(A)(ii), then the amount in controversy may come from the defendant's allegation in the notice of removal. § 1446(c)(2)(B).

If the plaintiff challenges the removing defendant's alleged amount, then the removing defendant must prove jurisdictional facts by a preponderance of the evidence. *See McPhail*, 529 F.3d at 954 ("[W]hat the proponent of jurisdiction must 'prove' is contested factual assertions . . . [j]urisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable 'fact'." (second and third alterations in original) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006))); *see also* 14AA Arthur R. Miller, *Federal Practice and Procedure (Wright & Miller)* § 3702.1, Westlaw (database updated Apr. 2022) ("[T]he removing defendant, not the state court plaintiff, has the initial burden of establishing the existence of federal subject matter jurisdiction since it is the party invoking that jurisdiction."). The removing defendant can meet its burden by pointing to "the plaintiff's informal estimates or settlement demands." *McPhail*, 529 F.3d at 954 (quoting *Meridian*, 441 F.3d at 541-42).

To estimate punitive damages, "a good rule of thumb . . . is to use an amount equal to compensatory damages." *Jones v. Legacy Burgers, LLC*, No. 20-cv-00441, 2021 WL 979629, at *4 (D.N.M. Mar. 16, 2021). This estimate is conservative; it is not uncommon for a New Mexico jury to award more than twice the amount of compensatory damages. *See, e.g., Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 5, 293 P.3d 954 (leaving undisturbed jury's award of $8,260.08 in compensatory damages and $50,000.00 in punitive damages based on insurer's breach of contract).

Finally, if the removing defendant meets its burden, then "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *McPhail*, 529 F.3d at 954 (quoting *Meridian*, 441 F.3d at 542 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938))); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir. 2003).

**III.    Analysis**

Garrison points to Ms. Trujillo's August 2022 settlement demand of $75,000. *See* ECF No. 7, at 6. This demand included only compensatory damages and not punitive damages or attorney's fees. *See* ECF No. 7-2, at 2-3 (requesting damages for medical expenses, pain and suffering, loss of enjoyment of life, loss of household services, and lost wages). If this valuation were correct, and Ms. Trujillo received only one dollar in punitive damages or attorney's fees, then the amount in controversy would be satisfied.

In fact, the August 2022 demand might be better understood as a request for Ms. Trujillo's policy limit minus the $25,000 that she received from the underinsured motorist's insurance. The $75,000 figure came after Ms. Trujillo stated that she understood her policy limit to be $100,000 and that she was asking for the policy limit. *See id.* at 2, 4. Accepting as true Garrison's statement

4

that Ms. Trujillo's policy limit is $300,000, one could understand Ms. Trujillo as putting $275,000 in dispute. *See* Resp. 2 (ECF No. 7); Def.'s Ex. A (ECF No. 7-1) (policy declarations). And that amount—which does not include punitive damages or attorney's fees—easily exceeds $75,000.

Ms. Trujillo highlights that her most recent counteroffer was $49,000. *See* ECF No. 5, at 3; ECF No. 5-2, at 2 (November 2022 letter). But even a focus on that number supports federal jurisdiction. The $49,000 amount would have been for compensatory and not punitive damages. After all, this request was made prelitigation—that is, before Garrison's refusal to resolve Ms. Trujillo's claims gave rise to the alleged need for punitive damages. If punitive damages equal compensatory damages, then the sum for both would be $98,000. *See Jones*, 2021 WL 979629, at *4. That amount still exceeds $75,000.

Ms. Trujillo emphasizes the arbitration certificate that she filed alongside her complaint. *See* ECF No. 5, at 3. True enough, Ms. Trujillo certified that she is not seeking an amount greater than $50,000—but she did so with an important caveat. *See* ECF No. 5-1. The $50,000 amount was "exclusive of punitive damages . . . and attorneys' fees." *Id.* The certificate may thus be reconciled with the analysis above: it is *possible* that Ms. Trujillo has a claim for $49,000 in compensatory damages, and a jury could also award her $49,000 in punitive damages.

Garrison thus meets its burden of proving jurisdictional facts by a preponderance of the evidence that make it "*possible* that $75,000 [is] in play." *McPhail*, 529 F.3d at 955. And Ms. Trujillo cannot establish to a legal certainty that this controversy is worth less than $75,000. The amount in controversy is thus sufficient for diversity jurisdiction.

## IV.     Conclusion

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff Sheila Trujillo's *Motion to Remand* (**ECF No. 5**) is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE